## WILLIAMSON & UPTON, Trustees, *vs.* THE NEW JERSEY SOUTHERN RAILROAD COMPANY and others.

The Raritan and Delaware Bay Railroad Company, to secure bonds issued by authority of their charter, executed a mortgage upon all and singular the railroad of the company, and upon certain branch railroads, and upon "all the railways, branches, ways, rights of way, and other lands, all tracks, bridges," &c., (describing the property in detail,) and all real and personal property held or acquired, or thereafter to be held or acquired by the company for use in connection with the railroads or branches of the company, or with any part thereof, or with the business of the same, including "steamboats, boats, barges, locomotives, tenders, cars, and other rolling stock or equipments, and all machinery, tools, implements," &c., and "all and singular the other personal property of any nature, kind and description whatsoever, belonging to the company, and also all franchises, property, &c., then held or thereafter to be acquired." The name of the company had been changed to "The New Jersey Southern Railroad Company." The trustees under the first mortgage, filed their bill to foreclose, making only the company and the trustees under the second and third mortgages, defendants. They took a decree *pro confesso* against all the defend-

ants, with the usual order of reference. Subsequently, certain of the first mortgage bondholders filed their petition, alleging that the New Jersey Southern Railroad Company, after the execution of the first mortgage, became the actual and substantial owners of certain property for use in connection with their road, among which are the Long Branch and Sea Shore Railroad and its appurtenances, and certain steamboats and other boats, and that afterwards they extended the L. B. and S. S. road, and built with their own funds a pier and costly buildings, to be used in connection with the road. The petitioners claimed that the bill in this cause was insufficient to secure their claim to a lien on this after-acquired property, and prayed to be admitted as complainants with the trustees, on behalf of themselves and all others who should come in, &c., and that the trustees might be instructed to make such amendments to the bill, or to file such supplemental bill as might be necessary to bring before the court for adjudication, the question which might exist as to the actual ownership of the L. B. and S. S. road and its property, and for a receiver of all the roads. *Held*—

1. That the lien of the mortgage attached to all such after-acquired property the instant it was so acquired, and by operation of the covenants in the mortgage, the trustees held it on, and subject to, the trusts of the mortgage.

2. A supplemental bill should be filed by the trustees, distinctly and fully setting up the claim insisted on by the petitioners, and making all parties in adverse interest, defendants. The litigation under the supplemental bill to be confined to the subject matter thereof. The frame of the bill and the parties to it to be settled by the court.

3. Bondholders are not necessary parties to a bill for foreclosure by their trustees, of the mortgage given to secure the bonds. Under the circumstances of this case, the petitioners are not proper parties complainant, but they will be admitted as defendants, if they desire.

4. Question of receivership not passed upon, the trustees having filed their petition that the receiver appointed under another application might be directed to deliver to them as trustees under the mortgage, the possession of the New Jersey Southern Railroad, including the L. B. and S. S. road and its appurtenances.

---

The Raritan and Delaware Bay Railroad Company were incorporated by an act of the legislature of this state, approved May 3d, 1854. They executed a mortgage to certain trustees to secure the payment of $1,000,000. Under foreclosure of that mortgage, the mortgaged premises therein mentioned, being the real and personal property and franchises of the company, were sold, and were purchased by the trustees

on or about September 14th, 1869. On the same day the trustees and certain other persons whom they associated with them for the purpose, organized themselves into a corporation under the act entitled "an act concerning the sale of railroads, canals, turnpikes, and plank roads," approved March 5th, 1858. They issued capital stock to the purchasers and their associates to the amount of their respective interests in the new company. On the same day the company executed and delivered to the complainants the mortgage whereon the bill of complaint in this cause is filed, to secure their bonds to the amount in the aggregate of $2,000,000. All of these bonds were issued. By act of February 16th, 1870, the proceedings by which the new corporation had been created were ratified, and the corporation were recognized, and their name changed to "The New Jersey Southern Railroad Company." Power was also given to issue bonds to be secured by mortgage, to an amount not exceeding $5,000,000, and the conveyance of the branch of the Camden and Atlantic Railroad, lying between Jackson (now Atco), in the county of Camden, and Atsion, in the county of Burlington, was ratified and confirmed. The mortgage made to the complainants granted, bargained, sold, conveyed, and transferred to them as trustees, as joint tenants and not as tenants in common, and to the survivors of them, and their successors and assigns, all and singular the railroad of the company, or which the company were by law authorized to construct, being the line of railroad theretofore known or thereafter to be known as the Raritan and Delaware Bay Railroad, as the same had theretofore been constructed or thereafter should be constructed from Port Monmouth, in the county of Monmouth, in this state, to the junction thereof with the Camden and Atlantic Railroad at Jackson, then known as Atco, in the county of Camden; together with the branch railroad from Eatontown, in the county of Monmouth, to Long Branch in that county, and the branch railroad from Manchester, in the county of Ocean, to Toms River in that county, and also including that piece of railroad formerly know as the Batsto branch of the

Camden and Atlantic Railroad Company, and extending from Atsion, in the county of Burlington, to the main line of the Camden and Atlantic Railroad at or near Jackson, in the county of Camden; including all the railways, branches, ways, rights of way, depot grounds and other lands, all tracts, bridges, viaducts, culverts, fences and other structures, depots, station-houses, engine-houses, freight-houses, wood-houses, water-stations and other buildings, and all machine-shops, and all real and personal property held or acquired, or thereafter to be held or acquired by the company, their successors or assigns, for use in connection with the railroads or branches of the company or with any part thereof, or with the business of the same; and including all steamboats, boats, barges, lighters, locomotives, tenders, cars and other rolling stock or equipments, and all machinery, tools, implements, fuel and material for constructing, operating, repairing or replacing the said railroads or branches or any part thereof, or any of the equipments or appurtenances of the said railroads or branches or any part thereof, and all machinery of all kinds, and all and singular the other personal property of any nature, kind, and description whatsoever belonging to the company, and all real estate of every kind belonging to them, wheresoever the same might be situated; and also all franchises connected with or relating to the said railroad or branches, or to the construction or maintenance or use of the said railroad or branches, and all the property, franchises, rights, and things, of whatsoever name or nature, then held or thereafter to be acquired by the company or their successors, together with all and singular the tenements, hereditaments, and appurtenances to the said railroad, branches, lands, and premises, or either thereof, belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, tolls, incomes, revenues, rents, issues, and profits thereof, and also all the estate, right, title, interest, property, possession, claim, and demand whatsoever, as well in law as in equity, of the company, of, in, and to the same, and of, in, and to every part thereof, with the appurtenances. It con-

tained a covenant charging with the lien of the mortgage after-acquired property, and also a covenant for assurance of such property. Default having been made in the payment of the interest, and in providing for the sinking fund, which by the mortgage the company were to establish and maintain, the trustees filed their bill in this court for foreclosure and sale of the mortgaged premises, making only the company and the trustees under the second and third mortgages, parties defendant. None of the defendants having answered, a decree *pro confesso* was made against all the defendants, with an order of reference to a master to ascertain and report the amounts due on the bonds secured by the several mortgages and the order and priority of the mortgages, and whether under the circumstances the mortgaged premises should be sold together, or whether a sale of part only is necessary, and if in parcels, in what parcels and in what order. After the making of that decree the petitioners, holders of bonds secured by the first mortgage to the amount of $238,000, filed their petition, alleging that the New Jersey Southern Railroad Company, after the execution and delivery of that mortgage, became the actual and substantial owners of certain property for use in connection with their road, among which were the Long Branch and Sea Shore Railroad and its appurtenances, and certain steamboats and other boats; and that after becoming owners of that road they extended it for their own benefit and with their own money, and to the like end built with their own funds a pier and costly buildings to be used in connection with the road. The petitioners, claiming that the bill in this cause is insufficient to secure their claims to a lien on this after-acquired property, pray to be admitted as complainants with the trustees, on behalf of themselves and of all others of the first mortgage bondholders of the New Jersey Southern Railroad Company who are similarly situated and who shall come in and bear their proportion of the expense of this proceeding and of all further proceedings that may be taken for their joint benefit; that the trustees may be instructed by the court to make such amendments to

the bill of complaint, or file such other and supplemental bill as may be needful and proper to bring distinctly before the court, for adjudication, the questions which may exist as to the actual ownership of the Long Branch and Sea Shore Railroad Company, and of its extension, with its piers, ferry-slips. and other connected structures, and the steamboats " Plymouth Rock " and " Jesse Hoyt," and other boats above mentioned, and as to the lien of the mortgage of the complainants upon the same and every part thereof; and also such other amendments as may be necessary and proper to set forth and claim a lien upon all the rolling stock, equipments, tools, implements, fuel, material, and other property in possession of the New Jersey Southern Railroad Company at the time of filing the bill in this cause, in which the petitioners include the Long Branch and Sea Shore Railroad and property; and also such other amendments as the petitioners may be entitled to and as may be necessary to secure full and complete justice to all parties; and that a receiver of both the roads, and especially of the Long Branch and Sea Shore Railroad, may be appointed in this cause and during the pendency of this suit. On filing the petition, an order was made requiring the trustees to show cause why the prayer of the petition should not be granted. The trustees answered the petition, alleging. that the proceedings were sufficient for the protection of all the interests of the bondholders in the mortgaged premises, as well those owned by the mortgagors when the mortgage was made, as any which had been subsequently acquired. On the argument, they moved for a supplemental order of reference to a master to ascertain and report as to the mortgaged premises, of what they consist, by what title they are held, and how they should be sold.

*Mr. Vanatta,* for the petitioners.

*Mr. B. Gummere,* for the trustees.

THE CHANCELLOR.

The first question which presents itself in the consideration of this application is, whether there is any occasion for the interference of the court with the conduct of this suit. It is well settled that the *cestuis que trust* in such a case as this are not necessary parties. *Willink* v. *Morris Canal & Banking Co.*, 3 *Green's Ch. R.* 377 ; *New Jersey Franklinite Co.* v. *Ames*, 1 *Beas.* 507. The petitioners claiming that the proceedings are defective, ask to be made parties complainant, merely in order that they may thus be the better enabled to watch over, protect and secure their interests in the subjects of the litigation, particularly in reference to the Long Branch and Sea Shore Railroad and its appurtenances, and the steamboats and other vessels mentioned in the petition, property which the mortgagors did not own when the mortgage was made, but which the petitioners insist, was acquired by them after its execution and delivery. The petitioners claim that this property is liable for the payment of the mortgage debt. The trustees, on the other hand, consider the proceedings apt and sufficient to protect and secure all the rights and equities of the petitioners. Of none of this property, however, does the bill make mention. It seeks the foreclosure and sale of the mortaged premises described in the mortgage, but makes no express claim to any property acquired by the mortgagors after the execution of that instrument. By its terms and covenants the mortgage extends to and covers with the lien it creates, not only the railroad of the mortgagors then constructed, but also all railroads which they thereafter should construct in connection with it, and all real and personal property held or acquired, or thereafter to be held or acquired by the company, their successors or assigns, for use in connection with their railroads or branches, or with the business thereof, including all steamboats, boats, barges, lighters, locomotives, tenders, cars and other rolling stock or equipments, &c., and all the property, franchises, rights and things of whatsoever name or nature, then held or thereafter to be acquired by the mortgagors or their successors, &c. The

mortgagors covenanted and agreed with the trustees, that whenever, and as often as the former, or their successors or assigns, should thereafter acquire any lands, or any equipment, or any other property or things of whatever name or nature, for use in connection with their railroads or of any part of either thereof, or of any other railroad which they then were authorized to construct, or should acquire any other property, rights, franchises or things whatsoever, they or their successors or assigns should and would acquire, possess and hold the same and every part and parcel thereof, upon and subject to the trusts of the mortgage, until conveyance thereof in pursuance of the covenant for further assurance should be duly made and delivered to the trustees or the survivor of them, or their successors in the trust. They further covenanted that they and their successors and assigns would execute, deliver and acknowledge from time to time and at all times thereafter, on request of the trustees, all such further deeds, conveyances and assurances in the law, for the better assuring to the trustees or the survivor of them, and their successors in the trust, on the trust in the mortgage expressed, the railroads, equipments, appurtenances, franchises, property and things thereinbefore mentioned and to which the company then were or might thereafter for any reason become entitled, or which they or their successors or assigns might in any manner acquire; and also, all other property, rights, franchises and things whatsoever, which might thereafter be acquired by the company, their successors or assigns; as by the trustees or their counsel learned in the law, should be reasonably advised, devised or required. If the company acquired, as the petitioners insist they did, after the delivery of the mortgage, the property in question, among which are the Long Branch and Sea Shore Railroad and its appurtenances, and the vessels above mentioned, the lien of the mortgage attached to it the instant it was so acquired, and by operation of these covenants, they held it on, and subject to the trusts of the mortgage. *Metcalfe* v. *Archbishop of York*, 1 *M. & C.* 547; *Lyde* v. *Minn*, 1 *M. & K.* 683; *Wellesley*

v. *Wellesley*, 4 *M. & C.* 561 ; *Lewis* v. *Maddocks*, 17 *Ves·* 49 ; *Fisher on Mortgages* 57 ; *Coote on Mortgages* 235 ; *Langton* v. *Horton*, 1 *Hare* 549 ; *Pennock* v. *Coe*, 23 *How.* 117 ; *Willink* v. *Morris Canal & Banking Co.*, 3 *Green's Ch. R.* 377 ; *Field* v. *Mayor of New York*, 2 *Selden* 179.

Is there reason to believe that the interest of the bond-holders requires that the claim they make in this connection, should be specifically set up in order that it may be litigated? It is evident from the petition, that it is likely to be contested. It is important, therefore, to consider on what foundation it seems to rest. That it is of the greatest importance to the bondholders to vindicate this claim, if it is capable of being established, is most manifest, and it is equally clear that it should be done before a sale of that part of the road, about which there is no contest, takes place, for the relation of the Long Branch and Sea Shore Railroad to the rest of the road is such, furnishing as it does its only northern terminus, that the comparative advantage and disadvantage of selling before this claim shall have been disposed of, are too obvious for remark. From the petition and affidavits the following grounds for advancing the claim may be gathered : that the New Jersey Southern Railroad Company, after the delivery of the mortgage, purchased and held, under legislative authority, about sixteen-seventeenths of the capital stock of the Long Branch and Sea Shore Railroad Company ; that in the books of the former company, this purchase was entered under the head of " Long Branch and Sea Shore Railroad purchase ;" that the New Jersey Southern Railroad Company went into possession of the Long Branch and Sea Shore Railroad and its appurtenances, and continued in such possession for years and up to the time when their property passed into the hands of a receiver appointed by this court, under proceedings in insolvency ; that they neither kept any separate account of the earnings or expenses of the road, nor rendered any account or made any return for the use of the road or property, but dealt with them as their own ; that they were recognized by the Long Branch and Sea Shore Railroad Com-

pany as the owners of the road ; that, when they went into possession, they discontinued the use of their former terminus at Port Monmouth ; that they expended on construction account on the railroad and property in question, down to and including the year 1873, more than $300,000, a part of which was spent in building a new pier for freight purposes, and a ferry-slip, both at the terminus of the Long Branch and Sea Shore Railroad, and in constructing about three miles of track at what was the northern and eastern terminus of the road when they took possession ; and that the organization of the Long Branch and Sea Shore Railroad Company, from the time when possession was so taken, was merely formally kept up. These facts are relied upon to show that the New Jersey Southern Railroad Company became the owners of the property in question. The merits of the claim are of course, in no sense before me. I can only look into the case as made by the petitioners and the trustees, to ascertain whether there are grounds to warrant me in directing that the claim be put into a position to be litigated. I think there are such grounds. A sale of the property in question, under the proceedings as they now stand, would leave any rights of the Long Branch and Sea Shore Railroad Company or other contestants, not parties to the bill, unaffected. But it is insisted on behalf of the trustees, that a sale under the proceedings, will pass to the purchaser whatever title the New Jersey Southern Railroad Company have acquired to the property, and that the court may either permit the right to be sold in that way, leaving the purchaser to litigate with the adverse claimants, or may hereafter and before sale, direct that proceedings be taken to litigate the claim. The former course would inevitably result in a sacrifice of the interest of the bondholders. The latter is the proper one, except that the litigation should be commenced at once and be advanced as rapidly as possible. There will be no occasion for disturbing the proceedings already taken. A supplemental bill may be filed, distinctly and fully setting up the claim insisted on by the petitioners, and all the parties in adverse interest may be called into court to answer that bill. The litigation under

the supplemental bill will be confined to the subject matter thereof. *Ensworth* v. *Lambert*, 4 *Johns. Ch.* 605; *Bignall* v. *Atkins*, 6 *Madd.* 369; *Story's Eq. Pl.*, § 334.

The remaining question is, whether the prayer of the petitioners to be admitted as complainants shall be granted. I see no reason for doing so. If the suit which the trustees have brought has not scope enough to answer the purposes for which it was instituted, the court will so direct them in the conduct of it as to remedy the defect. To admit the petitioners as complainants would be to introduce new *magistri litis* who may not be in accord with the present complainants in the management of the cause. The very ground on which the petitioners ask to be admitted is their dissatisfaction with the conduct of the suit by the trustees. They ask to be made co-complainants, in order that they may effect a better management. They are admittedly not necessary parties. Under the circumstances they are not proper parties complainant. They may be admitted as defendants if they desire it. There will be an order directing that a supplemental bill be filed, setting up the claim to the Long Branch and Sea Shore Railroad and property, and any other disputed property, which the trustees or the petitioners may, on reasonable apparent grounds, claim to be subject to the lien of the mortgage. The frame of the bill and the question as to who shall be parties to it, will be settled by the court, on notice to the trustees and petitioners. In order to a designation and description of the mortgaged premises to which no adverse claim is made, the reference asked for by the trustees is necessary. It will, of course, be confined to that property. The trustees having, since the argument of this motion, filed their petition, praying that the receiver appointed under the "act for the relief of citizens on the line of any railroad that has or may hereafter fail to operate," may be directed to deliver up to them as trustees under the mortgage, the possession of the New Jersey Southern Railroad, including the Long Branch and Sea Shore Railroad and its appurtenances, of which he is now in possession, I deem it unnecessary to pass upon the application of the petitioners for the appointment of a receiver.